## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ANTHONY A. AUMAN, | ) | |
| | ) | |
| Plaintiff, | ) | 4:09CV3163 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| MICHAEL J. ASTRUE, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

Anthony A. Auman (Auman) filed an application for disability benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401, *et seq.*, and supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*, on August 10, 2006.   The Social Security Administration (SSA) denied benefits initially and on reconsideration.  An administrative law judge (ALJ) held a hearing on October 23, 2008. On December 18, 2008, the ALJ determined Auman was not disabled within the meaning of the Act.  The Appeals Council denied Auman's request for review on May 29, 2009. Auman now seeks judicial review of the ALJ's determination as it represents the final decision of the Commissioner of the Social Security Administration.[1]  Auman filed a brief (Filing No. 13) and a reply brief (Filing No. 23) in support of this administrative appeal.  The Commissioner filed the administrative record (AR.) (Filing No. 18 - not available electronically), and a brief (Filing No. 16) in opposition to Auman's appeal.

Auman appeals the ALJ's decision and asks that the case be remanded for an award of benefits for three reasons:  (1) the ALJ failed to accord appropriate weight to Michael C. Renner's, Ph.D., (Dr. Renner) consultative physiological examination opinion and provided erroneous reasons for discrediting Dr. Renner's opinion; (2) the ALJ failed to incorporate all of Auman's limitations in a hypothetical question posed to the vocational expert (VE); and (3) the ALJ did not properly apply *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), when the ALJ determined Auman's credibility with regard to subjective

---

[1]  The parties consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  **See** Filing No. 10.

allegations of physical and mental conditions or limitations.  **See** Filing No. 13 - Brief p. 14.
This court has jurisdiction to review the final decision of the Commissioner of Social
Security under 42 U.S.C. § 405(g).  The court has reviewed the record, the ALJ's decision,
the parties' briefs, the transcript, and applicable law, and finds the ALJ's ruling that Auman
is not disabled should be affirmed because it is supported by substantial evidence in the
record.

## PROCEDURAL BACKGROUND

Auman applied for disability insurance benefits and SSI on August 10, 2006,
pursuant to the Act (AR. 10, 65-67, 454).  Auman alleged an onset of disability starting on
July 10, 2006, due to mental illness, high blood pressure, heart problems, and attention
deficit hyperactivity disorder (ADHD) (AR. 65, 102).  The SSA denied benefits initially (AR.
49-53) and on reconsideration (AR. 41-45).  Thereafter, ALJ Alexander Weir, III, held a
hearing on October 23, 2008 (AR. 10, 452-496).  The ALJ issued a decision on December
18, 2008 (AR. 7-22).  The ALJ determined Auman had the medically determinable
impairment of depression disorder; however,  Auman was not eligible for disability benefits
or SSI because he was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of
the Act (AR. 22).  The Appeals Council denied Auman's request for review on May 29,
2009 (AR. 2-4).

## FACTUAL BACKGROUND

### A.    Medical and Personal History

Auman was born September 9, 1977 (AR. 460).  Auman is married, without children,
and has been separated from his wife for two and a half years as of October 23, 2008 (AR.
460).  Auman currently lives in an apartment with a friend, Buffy Davis (Davis) (AR. 467-
468).  Auman's highest grade level of education completed is the 10th grade when he
attended special education classes to receive additional help from teachers for course work
(AR. 132, 460-461).

Auman's past relevant work consists of work as a manual laborer (AR. 89-91, 461).
Most recently, Auman worked at Gordon and Pallet and Crate (Gordon) as a wood cutter

for two to three months on a temporary part-time basis (AR. 461, 472).  In the past fifteen years, Auman worked in a Kawasaki factory and at a fast-food restaurant (AR. 464-465).  Auman has also worked as a drywaller and roofer (AR. 463).  Auman is not currently looking for work but is registered with a temporary agency (AR. 472).  Auman alleges he became unable to work on July 10, 2006 (AR. 65).  Auman's allegations of disability are based on mental problems, ADHD, high blood pressure, and heart problems (AR. 41, 49, 102).

Auman first visited BryanLGH Medical Center (BMC) on January 25, 2005, due to a toothache (AR. 363-364).  Auman was diagnosed with dental caries which required his teeth to be pulled (AR. 363-364).  On July 27, 2006, Auman was admitted to BMC for depression and suicidal thoughts, after having caught his wife in an extra-marital affair (AR. 342-352).  Auman admitted to trying to commit suicide eight years prior to July 27, 2006; however, he does not have a prior psychiatric history (AR. 342).  Rafael Tatay, M.D. (Dr. Tatay), Auman's attending physician during Auman's admission at BMC, assessed Auman as having major depressive disorder with suicidal thoughts, personality disorder, and a global assessment of functioning (GAF) score of 45[2] (AR. 356).  Auman was prescribed Cymbalta, Remeron Soltab, Zyprexa Zydis, Lorazepam, Mirtazipine, Hydrochlorothiazide, and Metroprolotartrate (AR. 384).  On August 5, 2006, Dr. Tatay determined Auman was psychiatrically stable and discharged Auman from the psychiatric floor (AR. 329). However, Vivek V. Kulkarni, M.D. (Dr. Kulkarni) considered Auman to still have some ongoing medical problems and decided to transfer Auman to the medical floor (AR. 329-332).  On August 9, 2006, Auman presented to BMC emergency department due to dental pain (AR. 288-292).   Auman was provided pain medication, advised to keep his appointment with a dentist, and discharged in stable condition (AR. 288-292).

---

[2]  The Global Assessment of Functioning (GAF) is a clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. **See** American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 30-32 (4th ed. text rev. 2000) (DSM-IV-TR).  A GAF of 41 through 50 is characterized by serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  **See** DSM-IV-TR at 34.

On August 17, 2006, Auman visited Community Mental Health Center of Lancaster County (CMHC) for the purpose of continuing depression and anxiety medications prescribed by Dr. Tatay and attending outpatient therapy services (AR. 381). During the pre-treatment assessment, Auman was "responsively coherent, congruent, and goal directed" (AR. 383). Auman was diagnosed with single episode, moderate, major depressive disorder and assigned a GAF score of 51[3] (AR. 384). On August 25, 2006, Auman's August 17, 2006, GAF score of 51 was reaffirmed (AR. 379).

On September 8, 2006, Auman was again admitted to BMC for suicidal thoughts (AR. 282-284). According to the admitting doctor's, Stephen J. Paden, M.D. (Dr. Paden), discharge summary, Auman did not experience any complications during his stay at BMC and had "regrouped fairly well" (AR. 282). Auman was diagnosed with depression and hypertension and discharged on September 11, 2006, to finish his course of medication and restart previously prescribed medication (AR. 282). Auman was assigned a GAF score of 50 at discharge (AR. 282).

Auman visited psychologist Dr. Roy of CMHC on September 21, 2006, for an individual session and medication evaluation (AR. 378). During this session, Auman admitted to using marijuana for a long period of time with no desire to quit as it helped to calm him down (AR. 378). Dr. Roy noted Auman was not able to understand how marijuana affected Auman's functioning (AR. 378). Auman told Dr. Roy that Auman had not had suicidal thoughts and he was focused on obtaining disability benefits (AR. 378). Dr. Roy noted Auman was not compliant with prescribed medication, which affected his overall functioning level (AR. 378). Further, Dr. Roy noted Auman reacted well to medication while in the hospital, but while taking similar medication outside of the hospital, the medication did not seem to work (AR. 378).

Auman visited Dr. Paden at CMHC on October 6, 2006 (AR. 376). Dr. Paden noted Auman was appropriate and mildly depressed with sleep disruption, but Auman did not have an active thought problem and was oriented and cognitively intact (AR. 376). Auman

---

[3] A GAF of 51 through 60 is characterized by moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). See *id.*

was not taking any antidepressant medication at the time of Auman's visist with Dr. Paden (AR. 376).  Dr. Paden's impression was Auman had single episode type major depression and placed Auman on Effexor (AR. 376).

On October 12, 2006, Gail Ihle, M.D. (Dr. Ihle) conducted a psychological evaluation of Auman (AR. 242-246).  During the evaluation, Auman stated he was fired for missing work because he does not have a car (AR. 243).  Auman stated he had difficulty working with co-workers due to poor communication (AR. 243).  Auman explained to Dr. Ihle he does not drink alcohol and had been smoking marijuana twice a week for the past twenty years but quit a few months prior Dr. Ihle's evaluation (AR. 243).

Dr. Ihle administered the Wechsler Adult Intelligence Scale - Third Edition test (AR. 242-246).  Auman's performance placed him within the low average range of intellectual functioning (AR. 244).  Auman's results were a Verbal IQ of 80, a Performance IQ of 91, and a Full Scale IQ of 84 (AR. 244).  According to Dr. Ihle, Auman's speech was slow, possibly due to medication, he looked to the ground when talking, and his judgment and insight was fair to poor (AR. 245).  However, Dr. Ihle noted Auman was alert and oriented, demonstrated an ability to organize his thoughts and present information conversationally, and he did not exhibit any signs of tension or anxiety, nor did Auman appear to have a thought disorder (AR. 245).  Dr. Ihle diagnosed Auman with single episode major depressive disorder, a learning disorder, and hypertension (AR. 246).  Dr. Ihle assigned Auman with a GAF score of 50 (AR. 246).

On October 18, 2006, Auman attended a disability evaluation with Ruilin Wang, M.D. (Dr. Wang) (AR. 237-241).  Dr. Wang summarized that Auman "has multiple mental disorder[s] with depression with recent suicide thoughts" (AR. 241).  Dr. Wang recommended Auman see a psychiatrist and counselor for a regular checkup (AR. 241).  Dr. Wang also recommended Auman see a primary care physician (AR. 241).

On November 5, 2006, a state agency medical consultant reviewed Auman's records from BMC, CMHC, and Dr. Ihle (AR. 181a).  The medical consultant completed a Psychiatric Review Technique Form (PRTF) and a Mental Residual Functional Capacity Assessment (MRFCA) (AR. 180-181a, 182-195).  The medical consultant indicated Auman had a mild restriction on activities of daily living, moderate difficulties in maintaining social

functioning, concentration, persistence, or pace, and one or two episodes of decompensation (AR. 192). In the MRFCA, the medical consultant opined Auman was moderately limited in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities with a schedule and maintain regular attendance; work in coordination with others without distraction; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and set realistic goals or make plans independently (AR. 180-181). In all other areas of the MRFCA, the medical consultant opined Auman was not significantly limited (AR. 180-181). The medical consultant noted while Auman's IQ is in the average to low average range, with some learning disability in the language area, there are no cognitive deficits that would prevent all work (AR. 181a). The medical consultant stated there was no evidence of ADHD, and if ADHD were present, it has not prevented Auman from working in the past (AR. 181a). Moreover, Auman's depression, along with cannabis use, decreases Auman's motivation but not to a degree that would prevent all work (AR. 181a). Lastly, the medical consultant agreed with Dr. Ihle that Auman's attention and concentration is adequate for simple tasks and any present psychological conditions are not consistent with marked psychological limitations (AR. 181a).

On June 22, 2007, Auman went to CMHC for a follow up visit with Dr. Paden (AR. 366). Dr. Paden noted Auman was inconsistent about attending psychiatric visits and taking his medication (AR. 366). Auman appeared depressed and withdrawn during this visit with Dr. Paden (AR. 366). Dr. Paden elected to continue Auman with Effexor and restarted Auman on Risperdal (AR. 366).

On August 27, 2007, Auman sought mental health treatment at Blue Valley Mental Health Center (Blue Valley) for anxiety and depression problems (AR. 216-219). Auman reported to Connie Harmon, LCSW (Ms. Harmon), a mental health counselor, that living with his girlfriend, Davis, and her three children created anxiety problems and anxiety attacks (AR. 216-217). Auman stated he had suicidal ideations in the past and sometimes feels as though he "does not have a reason to live" but knows suicide is "not the right way" (AR. 217). Auman denied any use of illegal drugs or alcohol or any problem in the past

with drugs or alcohol (AR. 218).  Auman informed Ms. Harmon that Auman was employed and made good money as a drywaller for five years (AR. 216).  However, after an argument with his brother concerning seniority, Auman worked on his own and eventually was laid off (AR. 216).

Ms. Harmon stated Auman had a clean appearance but was very nervous and had poor eye contact (AR. 218).  As the session progressed, Auman calmed down and was alert and oriented (AR. 218).  Ms. Harmon noted there were no psychotic thoughts or impairments in short or long term memory (AR. 218).  Ms. Harmon diagnosed Auman with panic disorder without agoraphobia and moderate, single episode, major depression and assigned a GAF score of 45 (AR. 218).  Ms. Harmon's progress notes from August, 2007, through December, 2007, indicated Auman worked successfully on his anxiety and depression (AR. 212-215).  Auman did not have suicidal ideations during this time and he continued to work on eye contact and positive thinking (AR. 212-215).  During Auman's meetings with Ms. Harmon, Auman improved his eye contact, fidgeted less, and exhibited positive emotion (AR. 212-215).

On January 10, 2008, Auman went to CMHC for a routine medication check with Dr. Roy and Lisa Young, MSN, APRN, BC (Nurse Young) (AR. 443).  Nurse Young noted Auman was anxious, tremulous, and in a depressed mood; however, Auman denied suicidal ideation (AR. 443).  Auman also had very poor eye contact (AR. 443).  Auman was on the following medications:  Paxil, Trazodone, Xanax, and Vistaril (AR. 443).  Auman saw Nurse Young on January 24, 2008, for another routine medication check (AR. 442).  Auman was still on the same mental health medication from his January 10, 2008, visit; however, Auman was not taking Vistaril as he was unable to afford the medication (AR. 442).  In addition, Auman was on several medications for his heart health (AR. 442).

Auman visited Dr. Renner, a licensed psychologist, on March 4, 2008, for a consultative evaluation (AR. 196).  Dr. Renner performed a psychological interview and administered Woodcock-Johnson - III Tests of Achievement (WJ - III) (AR. 196, 204, 208).  Auman's scores on the WJ-III are consistent with Dr. Ihle's IQ test administered on October 12, 2006 (AR. 204).  Dr. Renner noted Auman's overall functioning falls in the borderline range of both intellectual and academic functioning (AR. 204).  According to Dr. Renner,

7

Auman engaged in a great deal of over-thinking and Auman had difficulty concentrating, focusing, and staying on task (AR. 204).   Dr. Renner also noted Auman had difficulty providing information in a consistent and logical manner (AR. 206).   Dr. Renner opined Auman had difficulty understanding simple instructions, carrying out instructions under supervision, and functioning on a day-to-day basis in both work and non-work settings due to pain, depression, and panic-attack-like symptoms with agoraphobia (AR. 208).   Dr. Renner diagnosed Auman with major depression, panic disorder with agoraphobia, generalized anxiety disorder, personality disorder, learning disorder, and assigned a GAF score of 45 (AR. 196-210, 211).   Dr. Renner noted Auman appeared to put forth his best efforts in all assessments (AR. 196).   Dr. Renner also completed a Medical Source Statement of Ability To Do Work-Related Activities (Mental) (Medical Source Statement) on March 25, 2008 (AR. 173-175).   Dr. Renner opined Auman had moderate limitations on his ability to understand and remember simple instructions (AR. 173).   Dr. Renner noted that Auman had marked limitations with his ability in the following areas: to carry out simple instructions; to make judgments on simple work-related decisions; to understand and remember complex instruction; to carry out complex instructions; to make judgments on complex work-related decisions; to interact appropriately with the public, supervisors, and co-workers; and to respond appropriately to usual work situations and to changes in a routine work-setting (AR. 173-174).

On March 25, 2008, Auman went to CMHC for another routine medication check (AR. 440).   Auman was seen by Nurse Young who noted Auman does seem better with medication, but he still reported depression and irritability at times (AR. 440).   Nurse Young increased Paxil and continued Auman on Trazodone, Xanax, and Hydroxyzine (AR. 440).

On August 28, 2008, Auman presented to Tina Vest, APRN, BC, (Nurse Vest) a consultant psychiatric nurse practitioner from Blue Valley (AR. 391-392).   Auman relayed to Vest that Auman's medications were not helpful, people were out to get him, and he could read peoples' minds (AR. 391).   Auman specified he could read minds because knows what others think of him (AR. 391).   Vest noted Auman was depressed and anxious and had poor eye contact, rocked in his chair, but did not report suicidal ideations (AR. 391).   Vest diagnosed Auman with major depression, panic disorder, borderline personality

disorder, and assigned Auman a GAF score of 55 (AR. 392). Vest saw Auman again on September 25, 2008, and came to similar conclusions as in her notes from the August 28, 2008, visit (AR. 389). Nurse Vest determined there were no barriers preventing Auman from working (AR. 389). Nurse Vest continued Auman on his course of mental health medication and increased Auman's prescription of Effexor (AR. 389).

In October and November of 2006, and January of 2007, Auman canceled or did not attend previously scheduled individual therapy sessions and medication evaluations with Dr. Paden (AR. 366, 368-371). In December of 2007, and February of 2008, Auman did not keep appointments for medication evaluations with Nurse Young (AR. 441, 444). During October of 2007, and February through March of 2008, Auman failed to appear for his therapy sessions with Ms. Harmon (AR. 394). Further, Dr. Paden and Dr. Roy noted Auman's non-compliance with prescribed medication (AR. 366, 378).

## B.   Administrative Hearing

At the administrative hearing on October 23, 2008, Auman testified he could not work at his previous jobs because people talked about him, he was scared, and he would run away from problems and find a safe place (AR. 462). Auman testified he is scared of people because he thinks "everybody's out to get [him]" (AR. 465). Auman testified he has been experiencing these feelings most of his life (AR. 462).

Auman currently lives with Davis (AR. 479). Auman denied Davis was his girlfriend (AR. 479). Auman does not pay rent but is receiving housing assistance (AR. 479). Auman described a typical day as waking up at noon because he stays awake until two in the morning (AR. 466). When Auman is awake he sits on the couch or lays in bed (AR. 466). Auman does not do puzzles or games, but occasionally watches television, although he is unable to remember what he watches (AR. 466-467). Auman attempts to do household chores, but he gets "really hot," "winded," and his "blood pressure skyrockets" (AR. 469). Auman does not shop to avoid people in public places and overhead lights (AR. 469). Auman tries to sleep as much as possible (AR. 467).

Auman testified he leaves his apartment once a week to see his sister (AR. 468). Auman has other relatives in the area, but he does not see them because he is estranged

from the family (AR. 468).   Auman feels like the black sheep in the family because his family thinks he is worthless (AR. 468).   Auman said he has been estranged ever since he has been out of work (AR. 468).   Auman went to jail four to five years prior to the administrative hearing for speeding (AR. 482).   Auman stated he was taking drugs around the time he was arrested for speeding (AR. 482).   Auman's driver's license was revoked due to traffic tickets (AR. 481).

Auman is currently on three medications for his heart:  Metoprolol, Lisinopril, and Clonidine (AR. 470).   Auman is also taking Trazodone, Effexor, Xana, Risperdal, and other medications that he cannot remember (AR. 470).   The medications help him sleep at night (AR. 470).   Auman testified he no longer experiences suicidal thoughts, although he continues to experience random thoughts (AR. 470).   Auman also has stress and tries to ignore unexpected changes (AR. 471).

Auman is not currently looking for work (AR. 472).   However, according to Auman, to obtain financial benefits, he was required sign-up with General Assistance (GA) and with Workforce, an agency for temporary employment (AR. 472-473).   When the ALJ asked whether GA required Auman to work, Auman responded, "They required me to attempt to seek work or whatever" (AR. 473).   Further, Auman responded to the ALJ, "[H]e's been trying to get me to do it all the time, but – I don't know" (AR. 473-474).   Auman testified he used marijuana and methamphetamine three years ago for six months (AR. 476).   Auman was able to pay for the drugs while he worked as a drywaller in 2002 (AR. 477).   Auman does not drink alcohol because of ulcers, although he did drink around three years prior to the administrative hearing (AR. 478).

A VE, Steven Kuhn (Mr. Kuhn), testified at the hearing and provided an evaluation of Auman's past relevant work and employment opportunities (AR. 482-496).   The ALJ posed several hypothetical questions to Mr. Kuhn that assumed an individual of Auman's age, education, and work background (AR. 484-496).   In addition, the hypothetical individual had no exertional limitations, a mental impairment that would have moderate impact in detailed or complex tasks, a moderate limitation on attention and concentration, a moderate limitation in dealing with the general public, a moderate limitation in dealing with supervisors and co-workers, and a moderate limitation in dealing with changes in

routine (AR. 484).  The ALJ defined moderate as "more than mild and less than severe, but is significant enough to be noticeable, would be considered moderate on general observation as one understands the ordinary English uses for the term moderate, but would not preclude the function indicated" (AR. 484-485).  In each hypothetical, the ALJ changed one of the aforementioned limitations or added a limitation (AR. 484-496).

In the ALJ's first six hypothetical questions, Mr. Kuhn opined an individual with the stated limitations could return to past relevant work in all capacities either as a laborer, production machine operator, or both (AR. 483-486).  In hypothetical questions seven through nine, Mr. Kuhn testified the individual with the stated limitations could not return to past relevant work, but could work as a production machine operator or a production worker (AR. 487-488).  Auman's attorney also posed hypothetical questions to Mr. Kuhn (AR. 488-496).  In the attorney's hypothetical questions, the attorney defined moderate as "when the evidence supports the conclusion that the individual's capacity to perform activity is impaired" (AR. 490-491).  Further, the attorney defined impaired as, according to the American Heritage Dictionary of the English Language, "to be diminished, damaged, or weakened, functioning poorly or incompetently" (AR. 491).  In the context of the ALJ's first hypothetical question and with the attorney's definition of moderate and impaired, Mr. Kuhn opined an individual would not be able to perform any past relevant work or any other work in the national economy (AR. 491-492).  Mr. Kuhn stated if an individual is incompetent, as the attorney's definition of impaired suggests, an incompetent individual, due to the limitations imposed, would lack the ability to perform tasks or any work (AR. 491-492).

The attorney asked Mr. Kuhn whether an individual the same age as Auman with the same educational background, prior work experience, and the same level of activity as Auman, assuming Auman's testimony about his limitations was credible, would be able to perform Auman's past work (AR. 495).  Mr. Kuhn opined Auman would be able to perform some past relevant work but would not be able to engage in work in a regular and consistent manner as required in the work environment (AR. 495-496).  The ALJ asked whether a the tenth hypothetical individual, with the same limitations the attorney mentioned but using the ALJ's definition of moderate, would be able to perform past relevant work (AR. 494-495).  Mr. Kuhn responded such an individual would be able to

11

perform past relevant work with unlimited physical capacity and only moderate mental health issues (AR. 495).

## THE ALJ'S DECISION

The ALJ concluded Auman was not disabled under the Act from July 10, 2006, through the date of the decision (AR. 11).  Accordingly, the ALJ determined Auman was not entitled to any disability benefits or SSI (AR. 22).  The ALJ framed the issues as:  1) whether Auman was disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act; and 2) whether Auman met the insured status requirements of sections 216(i) and 223 of the Act (AR. 10).  In regard to the second issue, the ALJ found Auman remained insured through March 31, 2010, and must establish disability on or before that date to be entitled to a period of disability and disability insurance benefits (AR. 10).

As noted by the ALJ, the Act defines "disability" as an inability to engage in any substantial gainful activity due to any medically determinable physical or mental impairment or combination of impairments (AR. 10).  See 42 U.S.C. § 423(d)(1)(A) (2004); 20 C.F.R. § 404.1505.  These impairments must be expected to result in death or must last for a continuous period of at least 12 months.  *Id.*  The ALJ must evaluate a disability claim according to the sequential five-step analysis prescribed by the Social Security regulations. *Flynn v. Astrue*, 513 F.3d 788, 792 (8th Cir. 2008); 20 C.F.R. § 404.1520(a)(4).

> During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quotation omitted).  More specifically, the ALJ examines:

> [A]ny current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience.  See 20 C.F.R. § 404.1520(a); *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984).  If the claimant suffers from an impairment that is included in the listing of presumptively disabling impairments

(the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience.  **See *Braswell*, 733 F.2d at 533**.  If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy.  **See *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000)**.  A claimant's residual functional capacity is a medical question.  **See *id.* at 858**.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).  "If a claimant fails to meet the criteria at any step in the evaluation of a disability, the process ends and the claimant is determined to be not disabled."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

In this case, the ALJ followed the appropriate five-step sequential analysis.  In step one, the ALJ reviewed the record and found Auman had not engaged in any type of substantial and gainful work activity since July 10, 2006 (AR. 13).  Under the second step, the ALJ found Auman had a medically determinable impairment:  depression disorder (AR. 13).  The ALJ noted; however, Auman's chest and abdominal problems are not medically determinable impairments as there are no medical records establishing a serious condition (AR. 17).  The alleged conditions do not have more than a minimal affect on Auman's basic work abilities (AR. 17).

At step three, the ALJ determined Auman did not have an impairment or combination of impairments that meets or medically equals one of the impairments described in the Listings of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925 and 416.926) (AR. 17-18).  The ALJ concluded Auman had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration (AR. 17).  Because Auman's mental impairments do not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation each of extended duration, the ALJ found the

13

"paragraph B[4]" criteria were not satisfied (AR. 17).  Similarly, the ALJ found the evidence failed to establish the presence of the "paragraph C" criteria therefore "paragraph C" criteria were not satisfied (AR. 17).

The ALJ proceeded to step four to determine Auman's residual functioning capacity (RFC) (AR. 18-21).  The ALJ noted the RFC assessment reflected the degree of limitation the ALJ found in the "paragraph B" mental function analysis (AR. 18).  The ALJ stated he considered all of Auman's symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929, and Social Security Rulings (SSR) 96-2p, 96-5p, 96-6p, and 06-3 (AR. 18).  The ALJ used a two-step process in considering Auman's symptoms (AR. 18).  First, the ALJ determined whether there was an underlying medically determinable physical or mental impairment(s) that could reasonably produce Auman's pain or other symptoms (AR. 18).  Second, once an underlying physical or mental impairment(s) was shown, the ALJ evaluated the intensity, persistence, and limiting effects of Auman's symptoms to determine the extent to which they limit Auman's ability to do basic work activities (AR. 18).  Further, as the ALJ noted during the second step, when statements about the intensity, persistence, and limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire record (AR. 18).

After careful consideration of the evidence, the ALJ found Auman's medically determinable impairment, depression disorder, could reasonably be expected to cause the alleged symptoms (AR. 19).  However, the ALJ found Auman's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the RFC assessment (AR. 19).  The ALJ noted Auman was treated at BMC in July and August of 2006, for suicidal ideations after Auman's wife left

---

[4]  The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorder described in the diagnostic description, that is manifested by the medical findings in paragraph A. The criteria in paragraph A substantiate medically the presence of a particular mental disorder.

him (AR. 19). The ALJ stated this appeared as the only period of time when Auman was psychiatrically hospitalized (AR. 19). Further, the ALJ noted Auman was admitted with a GAF score of 45 but on Auman's discharge, Auman's GAF score had increased to 50 (AR. 19).

The ALJ determined the medical evidence, taken in its entirety, indicated Auman's depression, while it does limit certain aspects of Auman's functioning, has improved and is not so severe as to prevent Auman from working (AR. 20). The ALJ also noted various medical visits Auman had from August 17, 2006, to January 2008 (AR. 19-21). The ALJ found it significant that, during the hearing, Auman testified his medication effectively prevents suicidal thoughts and hospitalization (AR. 20). The ALJ also determined Dr. Renner's assessment, that Auman has marked limitations in his ability to understand simple instructions, was not supported by the record (AR. 20). Further, other evidence from CMHC reflects Auman has an average level of intellectual functioning (AR. 20). Lastly, the ALJ noted Auman had a girlfriend and was able to fill out numerous job applications from which Auman received call-backs (AR. 20).

In addition to relying on the record as a whole, the ALJ gave great weight to the findings of the state agency medical consultant finding only mild or moderate restrictions (AR. 20). The ALJ considered Auman's complaints, Auman's prior work record, and Auman's daily living activities as they compared with the objective medical evidence and the ALJ found the subjective complaints unsupported (AR. 20).

The ALJ's conclusions rely on several inconsistencies in the record (AR. 20). First, although all of the evidence indicates Auman is avoidant of, suspicious and distrustful of people, Auman nevertheless was married and currently has a girlfriend (AR. 20). Second, although Auman testified he was living with just a friend, all notations in Auman's medical records indicate Davis is Auman's girlfriend (AR. 20). Third, although Auman testified to the contrary, notes from Dr. Roy indicate Auman used marijuana as recently as September of 2006 (AR. 20). Fourth, the ALJ also mentioned Auman has an average level of intellectual functioning and was noted to have an improved mood in 2007 and 2008 (AR. 20-21). Lastly, the ALJ noted the overall record clearly established Auman was non-compliant with the prescribed course of medication and treatment (AR. 21).

Based on the ALJ's evaluation of the evidence, the ALJ determined Auman was capable of performing his past relevant work as a production machine operator and laborer (AR. 21). The ALJ determined this work does not require the performance of work-related activities precluded by the claimant's RFC (AR. 21). The ALJ asked the VE a hypothetical question about the work abilities of an individual with Auman's age, education and work background, with the relevant RFC (AR. 21). The VE testified the hypothetical individual could perform Auman's past relevant work (AR. 21). Therefore, the ALJ concluded, based on the VE's testimony, Auman remains capable of performing past relevant work as generally performed in the national economy and as the work was actually performed (AR. 21). Based on these conclusions, Auman is not disabled as defined by the Act (AR. 21).

Auman appeals the ALJ's decision on three grounds: (1) the ALJ failed to accord appropriate weight to Dr. Renner's consultative physiological examination opinion and provided erroneous reasons for discrediting Dr. Renner's opinion; (2) the ALJ failed to incorporate all of Auman's limitations in a hypothetical question posed to the VE; and (3) the ALJ did not properly apply *Polaski*, when determining Auman's credibility. **See** Filing No. 13 - Brief p. 14. The court will address each issue below.

## STANDARD OF REVIEW

A district court is given jurisdiction to review a decision to deny disability benefits according to 42 U.S.C. § 405(g). A district court is to affirm the Commissioner's findings if "supported by substantial evidence on the record as a whole." *Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 974 (8th Cir. 2009). "[I]t is the court's duty to review the disability benefit decision to determine if it is based on legal error." *Nettles v. Schweiker*, 714 F.2d 833, 835-36 (8th Cir. 1983). Questions of law are reviewed *de novo*. **See** *Olson v. Apfel*, 170 F.3d 822 (8th Cir. 1999). Findings of fact are considered conclusive if supported by substantial evidence on the record as a whole. **See** *Nettles*, 714 F.2d 833. Furthermore, "[the court] defer[s] to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Pelkey*, 433 F.3d at 578 (**quoting** *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); **see also**

*Burress v. Apfel*, 141 F.3d 875, 878 (8th Cir. 1998) (noting "substantial evidence in the record as a whole" standard is more rigorous than the "substantial evidence" standard).

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008); **see** *Pelkey*, 433 F.3d at 577. "In reviewing the record, the court must consider both evidence that supports and evidence that detracts from the Commissioner's decision." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (internal quotations and citation omitted). The reviewing court "will not reverse simply because some evidence may support the opposite conclusion." *Pelkey*, 433 F.3d at 578. "Whether the record supports a contrary result or whether we might decide the case differently is immaterial." *Tellez v. Barnhart*, 403 F.3d 953, 956 (8th Cir. 2005); **see** *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008).

## DISCUSSION

### A.    Dr. Michael C. Renner's Opinion

Auman argues the ALJ erroneously failed to follow the opinion of Dr. Renner, gave erroneous reasons why Dr. Renner's opinion should be discredited, and substituted the ALJ's medical opinion for that of Dr. Renner's opinion. **See** Filing No. 13 - Brief p. 14, 19. Auman contends no medical findings, examinations, or opinions in the record contradict Dr. Renner's opinion. *Id.* at 19. Auman argues the ALJ failed to discuss all but one of Dr. Renner's opinions. *Id.*

"The opinion of a consulting physician who examines a claimant once . . . does not generally constitute substantial evidence." *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003) (citation omitted). "ALJs are not obliged to defer to physician's medical opinions unless they are 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in the record.'" *Juszczyk*, 542 F.3d at 632 (alteration in original) (**quoting** *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005)). The reviewing court "will not reverse simply because some evidence may support the opposite conclusion." *Pelkey*, 433 F.3d at 578. The ALJ has a duty to fully and fairly develop a record; however, the ALJ does not have to discuss every

piece of evidence presented. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). Moreover, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman*, 596 F.3d at 966 (alteration in original) (**citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)**).

The ALJ did not substitute the ALJ's own medical opinion for that of the consultative examiner, Dr. Renner. The ALJ stated Dr. Renner's consultative assessment was not supported by the record. "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(d)(4). The ALJ gave great weight to the record as a whole and to the findings of the state agency medical consultant. The ALJ did not, as Auman would like this court to believe, completely disregard Dr. Renner's opinion. Instead, the ALJ gave great weight to the record as a whole, which led the ALJ to determine Auman's limitations are not as severe as Auman claims.

The ALJ specifically noted in the ALJ's opinion that Dr. Renner's assessment of marked limitations in Auman's ability to understand simple instruction is not supported by the record (AR. 20). A determination about the nature and severity of Auman's impairments is reserved to the ALJ. **See** 20 C.F.R. § 404.1527(e)(2) (stating "the final responsibility for deciding these issues is reserved to the Commissioner"). The ALJ noted Auman's IQ scores, CMHC's medical records, and Auman's lack of credibility contradict Dr. Renner's assessment of a marked limitation (AR. 20). Numerous inconsistencies in Auman's medical records and testimony support the ALJ's determination that "the objective medical evidence does not support the severity of the claimant's alleged symptoms" (AR. 20). Although Dr. Renner provided an opinion beneficial to Auman, Dr. Renner's opinion does not control the result.

The ALJ stated, after consideration of the entire record, Auman has the RFC to perform a full range of work at all exertional levels even though Auman is precluded from complex or detailed tasks (AR. 18). The ALJ recognized Auman's limitation regarding complex or detailed tasks, a marked limitation Dr. Renner noted in the Medical Source Statement, and included the limitation in the ALJ's determination (AR. 18, 173). The ALJ determined, consistent with the objective medical and other evidence, all other limitations

18

were moderate, such as dealing with the general public, supervisors, coworkers, and working in proximity of others (AR. 18).

Although the ALJ did not specifically mention each of Dr. Renner's opinions, the court will not assume the ALJ disregarded Dr. Renner's opinions. By contrast, the ALJ recognized Auman's limitation with regard to complex or detailed tasks. The ALJ further explained why Dr. Renner's assessment of a marked limitation in regard to Auman's ability to understand simple instructions was not supported by the record. The ALJ did not disregard Dr. Renner's opinions and is otherwise supported by substantial evidence in the record.

## B.      Hypothetical Questions Posed to Vocation Expert

Auman contends the ALJ erred in failing to incorporate all of the claimant's documented limitations and conditions into the hypothetical question posed to the VE. **See** Filing No. 13 - Brief p. 14. Auman argues that although the ALJ included the moderate limitations imposed by the state agency medical consultant, the ALJ erroneously defined "moderately limited." *Id.* at 20-21. Auman contends the Program Operation Manual System (POMS) definition of "moderately limited" should have been used when the ALJ posed hypothetical questions to the VE, rather than the ALJ's definition of "moderately limited." *Id.*

At the administrative hearing, the ALJ defined "moderate" as meaning "more than mild and less than severe, but is significant enough to be noticeable, would be considered moderate on general observation as one understands the ordinary English uses for the term moderate, but would not preclude the function indicated" (AR. 484-485). Based on this definition and response to the hypothetical questions posed by the ALJ, the VE testified an individual could perform past relevant work or other jobs in the economy (AR. 484-488). In contrast, Auman's attorney defined "moderately limited" as "when the evidence supports the conclusion that the individual's capacity to perform activity is impaired" (AR. 489) (**citing** POMS DI 24510.63(B)(2)). The VE denied the definition was sufficient for the VE to respond to Auman's question (AR. 491). Auman then defined "impaired" as "diminished, damaged, or weakened, functioning poorly or incompetently"

(AR. 491) (**citing** American Heritage Dictionary of the English Language (4th ed. 2000). In response to Auman's hypothetical question, the VE testified that if the definition of impaired included "incompetent," then an individual would not be able to perform past relevant work or any other work in the national economy (AR. 491-492).

Hypothetical questions posed to a VE are proper if they sufficiently set out all of the impairments accepted by the ALJ as true, and if the questions likewise exclude impairments that the ALJ has reasonably discredited. *Pearsall v. Massanari*, 274 F.3d 1211, 1220 (8th Cir. 2001). An ALJ may exclude from the hypothetical question posed to the VE "any alleged impairments that [the ALJ] has properly rejected as untrue or unsubstantiated." *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001).

In the ALJ's hypothetical questions, the ALJ included the moderate limitations the medical consultant identified in the consultant's MRFCA (AR. 180-181a, 484-488). The limitations the ALJ used in the hypothetical questions are the limitations the ALJ accepted as true. The ALJ's definition of "moderately limited" is appropriate considering the ALJ's determination of Auman's actual limitations. Although the POMS does provide a different definition of "moderately limited," there is no indication in the medical consultant's MRFCA that the consultant considered the POMS definition as the controlling definition. The VE even stated the POMS definition of "moderately limited" was insufficient for the VE to determine an individual's work capabilities (AR 491). There is also no indication the consultant used Auman's definition of "impaired" from the American Heritage Dictionary of the English Language.

The ALJ's definition of moderately limited and hypothetical questions reflect the ALJ's determination of Auman's credible limitations. The ALJ's definition of "moderately limited" is consistent with the definitions used in the medical evidence and by medical consultants. **Compare** AR. 20, 484-485 **with** 181a - Part III Evaluation, consistency, and credibility. Additionally, the ALJ's use of the term appropriately reflects the medical evidence as a whole and descriptions of Auman's limitations. Therefore, the ALJ did not err in defining "moderately limited" when posing hypothetical questions to the VE.

C.    **Credibility Determination**

Auman argues the ALJ improperly applied the ***Polaski*** factors when evaluating Auman's credibility regarding subjective allegations of his physical and mental conditions. **See** Filing No. 13 - Brief p. 24 (**citing** ***Polaski v. Heckler***, 739 F.2d 1320, 1322 (8th Cir. 1984)).  Auman recognized the ALJ did list some of the criteria for evaluating Auman's testimony of subjective conditions and their limitations.  **See** *Id.* at 24.  However, Auman argues the ALJ did not identify any specific activities in daily living that demonstrate an ability to perform work on a regular or continuing basis and render Auman incredible.  *Id.* Auman states of the ALJ's opinion:

> The ALJ only claimed that "the objective medical evidence does not support the severity of claimant's alleged symptoms . . . [and that he had] given full consideration to all of the evidence presented relating to the claimant's subjective complaints, including but not limited to, the claimant's prior work record, as well as the claimant's activities of daily living."

*Id.* (alteration in original) (**quoting** AR. 20).  Auman asserts the ALJ had no legitimate basis under ***Polaski*** to discredit Auman's testimony.  *Id.*

In determining a claimant's RFC, the ALJ must evaluate the claimant's credibility, in addition to considering the medical evidence and observations of physicians and others. ***Willcockson v. Astrue***, 540 F.3d 878, 881 (8th Cir. 2008).  A court gives the ALJ deference in determining the credibility of a claimant's allegations concerning a claimant's limitations, where the credibility determination is supported in the decision.  ***Tellez***, 403 F.3d at 957.  In evaluating subjective complaints, an ALJ is to examine objective medical evidence in addition to the factors set forth in ***Polaski***.  These factors include:  (1) the claimant's day to day activities; (2) the duration, intensity, and frequency of symptoms; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions.  ***Polaski***, 739 F.2d at 1322.

The ALJ applied the correct legal standard in evaluating Auman's credibility as to Auman's symptoms and the effect, if any, those symptoms have on Auman's ability to function.  In determining whether Auman's complaints are credible, the ALJ must give reasons for discrediting the testimony and explain any inconsistencies found.  ***Pirtle v.***

21

*Astrue*, 479 F.3d 931, 933 (8th Cir. 2007). In this instance, the ALJ acknowledged, citing 20 CFR 404.1519 (incorporating and expanding upon *Polaski*; SSR 96-4p and 96-7p), the lack of medical evidence to support Auman's claimed symptoms is just one factor to consider in evaluating Auman's credibility (AR. 20). The ALJ also relied on Auman's prior work record and activities of daily living (AR. 20). Further, the ALJ noted several inconsistencies in the record (AR. 20). The ALJ found inconsistencies regarding Auman's daily life, illegal drug use, prescribed medication use, and treatment history (AR. 20). The ALJ engaged in a thorough analysis of Auman's testimony and discredited Auman's credibility pursuant to the applicable and appropriate criteria. Because the ALJ applied the correct legal standards, the court must take the ALJ's findings of fact as conclusive if supported by substantial evidence on the record as a whole. **See *Nettles*, 714 F.2d at 833**.

The ALJ found Auman only partially credible as Auman's allegations appear more severe than the evidence allows (AR. 20). The ALJ explicitly gave great weight to the record as a whole, including the findings of the state agency medical consultant (AR. 20). The ALJ specifically noted several inconsistencies in Auman's records and testimony which support the ALJ's determination about Auman's lack of credibility. The ALJ noted Auman was once married, lived with his girlfriend, and able to complete job applications and received call-backs, which indicate his ability to socialize in the community (AR. 20). The ALJ also noted medical records show Auman used marijuana more recently than Auman testified (AR. 20). Further, the ALJ stated the overall record clearly established Auman was non-compliant with the medical providers' medication and treatment recommendations (AR. 20-21). In this case, the ALJ properly evaluated Auman's credibility based on evidence in the record, including medical examinations and testimony. The record as a whole supports the ALJ's decision to discredit Auman's testimony as to the severity of Auman's symptoms.

## CONCLUSION

For the reasons stated above, the court concludes the ALJ's decision, which represents the final decision of the Commissioner of the SSA, should not be reversed or

remanded.  The ALJ's decision does not contain the errors alleged by Auman.  Specifically, substantial evidence in the record supports the ALJ's decision with regard to the weight accorded to Dr. Renner's opinion, Auman's limitations, and Auman's credibility. Accordingly, the Commissioner's decision is affirmed.

**IT IS ORDERED:**

The decision of the Commissioner is affirmed, the appeal is denied, and judgment in favor of the defendant will be entered in a separate document.

DATED this 16th day of June, 2010.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.